## Hopper v. Hopper, et al.

(Decided December 10, 1912.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Conveyances—Action to Set Aside—Fraud.—Evidence examined and found not to authorize the setting aside of the conveyance for fraud.

2. Conveyances—Action to Set Aside—Equities.—Although there is no evidence authorizing the setting aside of the conveyance for fraud, it does appear that the grantor paid $2,000 on the property before she conveyed it, therefore, as the agreemnt as to what the consideration should be, could not be fully carried out, the grantor is adjudged, under her general prayer for all equitable and proper relief, a lien for $1,500 against the property.

3. Conveyances—Husband to Wife—Knowledge of Equities.—The wife took the conveyance from her husband with the knowledge that his grantor had equities therein, therefore her rights will not be prejudiced by adjudging his grantor a lien thereon.

MYERS & HOWARD for appellant.

D. C. LEE, S. D. ROUSE for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant, Mary F. Hopper, is a widow about sixty-eight years of age. Her husband died in Cincinnati, Ohio, several years ago leaving her and several infant children with a small estate. She bought a lot in the town of Bellevue, Kentucky, and with the help of her son, Charles Hopper, appellee, and her three daughters when they arrived at a sufficient age, erected a house upon the lot. She borrowed some money from a building loan association in Bellevue to help erect the house, but by her own efforts and with the aid of her children she repaid the loan and she was then the owner of the property which was worth about $2,500, free of any lien. The mother and children then concluded that they would like to have a home in the country, so they bought a house and about four acres of ground from a man by the name of Graf, which was located at Crescent Springs, Kenton County, at the price of $3,900. To secure the money with which to make the first payment of $1,000 on this property, Mrs. Hopper executed a mortgage on her home to the building loan association, and executed a second mortgage for the same

amount on the same property to meet the second payment. At about this time Charles Hopper married Georgia Noe Hopper, his co-appellee. When the last purchase money note on the Crescent Springs property fell due, appellee approached his mother and proposed to her that if she would convey it to him he would mortgage it to a building loan association in Covington, Kentucky, and raise the money to pay the note; that he would arrange to pay off the debt to the Covington association and also the debts held against the Bellevue property, if she would allow the rents from the Bellvue property to go to him to aid in settling the matter. It was also expressly understood that Mrs. Hopper should have a home with her son on the Crescent Springs property, so long as she lived and that he was to furnish her with the necessaries of life. The mother and son were the only two witnesses who testified in the case, and they do not differ in any material degree. The mother conveyed the Crescent Springs property to her son and moved there intending to make her home, but soon became dissatisfied. The wife of appellee and his mother could not, for some reason not explained in the record, live together. Mrs. Hopper said she had rather live in the gutter the rest of her days than to live with her daughter-in-law. Appellee's wife complained to him about appellant's conduct and appellant complained to him of his wife's conduct. The turmoil became so great that the mother left and went to her property in Bellevue. After this the son ceased making any payments on the Bellevue property and the association demanded its debts. Appellant having no means to pay the association, she sold the property, as she claims she was compelled to do, at a sacrifice. She received $250 in cash and the purchaser assumed the mortgage debts.

Appellant instituted this action to have the deed she made to her son conveying the Crescent Springs property, set aside. Soon after she conveyed the property to her son, he deeded it to his wife as a gift. Upon a trial of the case, the lower court dismissed appellant's petition, stating that he was unable to find any proof of fraud on the part of appellee. We agree with the lower court in this respect. Every fact appearing in the record shows the son to be an excellent, industrious and honorable young man. The record likewise shows that appellant was an intelligent and good woman, and the

unfortunate circumstance, the falling out of the mother and daughter-in-law is to be regretted, but nevertheless it is a fact. The separation exists, and, according to the testimony, they cannot live together in peace. The court was right in not setting the deed aside for fraud, but appellant should have at least been adjudged a lien on the Crescent Springs property for her maintenance. She paid $2,000 of the purchase price of that property by placing mortgages on her Bellevue home. She is now old and without a home. For a time she worked first one place then another, but finally received an injury which rendered her unable to make a living for herself. Under these circumstances, equity and justice demand that appellant should have back at least a portion of the money she paid on the Crescent Springs property, to enable her to live in some comfort the balance of her days. This ought to and doubtless will meet with the approval of her son. He carried out his part of the contract with his mother until his wife and mother were unable to longer live together and the mother left his home. In our opinion, a lien should be declared on the Crescent Springs property for $1,500 in favor of appellant. It is to be subject, however, to the mortgage lien of the Covington Building Loan Association for money paid on the purchase price of the property.

The wife of Charles Hopper took the conveyance for the property without paying any money consideration, therefore, as she knew of the equities of her mother-in-law in the property, declaring a lien upon the property to secure those equities will not disturb any pre-existing equities of the wife. Appellant is entitled to this relief under her general prayer for all equitable and proper relief. On the return of the case the lower court will adjudge the payments of this lien debt on the terms most agreeable to the mother and son, and if they fail to agree, the court will then fix yearly payments least hurtful to appellee, but keeping in mind the maintenance of appellant.

For these reasons, the judgment is reversed and case remanded for further proceedings consistent with this opinion.